Sonia BARTEE, Appellant,

v.

UNIVERSITY MEDICAL CENTER, Dr. Craig Roberts, Dr. Ranier Lenhart and Hon. John W. Thacker, Administrative Law Judge and Workers' Compensation Board, Appellees.

No. 2007–SC–000094–WC.

Supreme Court of Kentucky.

Jan. 24, 2008.

---

Wayne C. Daub, Louisville, KY, Counsel for Appellant, Sonia Bartee.

Lyn Douglas Powers, Fulton & Devlin, Louisville, KY, Counsel for Appellee, University Medical Center.

Dr. Craig Roberts, pro se.

Dr. Ranier Leinhart, pro se.

## OPINION OF THE COURT

KRS 342.125 permits a final workers' compensation award to be reopened. KRS 342.125(4) gives an Administrative Law Judge (ALJ) broad authority to modify a reopened award but also provides that "[r]eopening shall not affect the previous order or award as to any sums already paid thereunder, and any change in the amount of compensation shall be ordered only from the date of filing the motion to reopen."

During the pendency of the defendant-employer's reopening to contest its liability for a surgery and after the claimant returned to work, she filed a motion to reopen to seek temporary total disability (TTD) benefits. An ALJ found that the surgery was compensable and awarded a period of TTD that began on the date of the surgery, reasoning that the employer's reopening placed the question of TTD in issue. Affirming in part and reversing in part, the Workers' Compensation Board determined that KRS 342.125(4) gave the ALJ broad authority to award TTD because the issue was raised during the pendency of the employer's motion, but the statute did not permit TTD to be awarded before the date of the employer's motion. A divided Court of Appeals reversed. It determined that the medical dispute did not encompass the TTD issue and that KRS 342.125(4) prohibited a TTD award because the claimant filed her motion to reopen after the period of TTD expired. We affirm.

The claimant's application for benefits indicated that she injured her knee on May 9, 1996, within the scope and course of her work for the defendant-employer. She testified subsequently that her work as a file clerk required her to stand and pull files and that she felt her knee pop as she was reaching for a file. Records from Occupational Physicians Services indicated that she sought treatment that day and was permitted to return to work described as "sit down duty." She underwent surgery on June 24, 1996, and returned to light duty work in August 1996.

On July 16, 1997, an ALJ approved an agreement to settle the claim. The agreement described the injury as a tear of the lateral meniscus of the left knee and the arousal of a pre-existing condition. It listed the employer and the Special Fund as being defendants and stated that they bore equal liability for income benefits based on a 16.4% permanent partial occupational disability. The agreement also provided that related medical expenses were "to be paid pursuant to statute."

The claimant's symptoms failed to abate, and controversies arose over her medical treatment. A December 12, 2000, letter from the employer's insurance carrier to the claimant's treating physician stated that that physical therapy had been authorized and that the claimant "was 100% wrong when she told you we had denied

physical therapy." The statement was consistent with the relevant pre-certification form. A subsequent medical dispute was settled on May 16, 2002, with the parties agreeing that the Pain Control Network would receive a lump sum of $1,500 but that the provider's future treatment would be subject to utilization review.

The present controversy arose after a left knee MRI performed in March 2004 revealed a tear in the anterior lateral meniscus. The claimant's treating physician recommended surgery, and the employer's carrier submitted the request and the claimant's medical records to Dr. Wolens for utilization review. He noted that the MRI finding did not correlate with her symptoms or with the fact that the original tear was posterior rather than anterior. Thus, the carrier refused to pre-certify the surgery.

The claimant underwent the procedure on April 21, 2004. At her request, the carrier reconsidered its denial and submitted the claim to Dr. Loeb for another utilization review. After he concluded that the surgery was unrelated to the work injury, the carrier refused payment. On June 8, 2004, the employer filed a motion to reopen in order to contest its liability and a motion to join the medical providers. The claimant joined in the motions, and they were granted to the extent that the Chief ALJ reassigned the matter for further adjudication. The claimant testified in the medical dispute that she returned to work on June 21, 2004.

On September 10, 2004, the claimant filed a motion to reopen. It alleged that the employer refused to authorize additional medical treatment and/or refused to pay for treatment and also alleged that her temporary or permanent disability had increased since she settled the initial claim. The ALJ sustained the motion but determined on reconsideration that the period of limitations found in KRS 342.125(3) and (8) barred reopening for increased permanent disability benefits. Although the parties' motions were consolidated, the sole issue listed on the May 3, 2005, benefit review conference memorandum was "medical fee dispute/compensability of surgery." The claimant asserted in her brief not only that the surgery was compensable but also that she was entitled to TTD benefits from the date of the surgery until her return to work.

The ALJ held that the employer was liable for the surgery and related medical treatment. Based on the claimant's petition for reconsideration, the ALJ amended the decision to award TTD benefits from April 24, 2004, through June 21, 2004. In denying the employer's petition for reconsideration of the amended order, the ALJ reasoned that because the surgery resulted in TTD, the issue of TTD arose from the employer's reopening to contest the surgery. The ALJ also found that the principles of waiver and estoppel precluded the employer from objecting to TTD because the issue arose in the natural course of events from the issue regarding the compensability of surgery.

The Board affirmed in part but adopted a different rationale. It acknowledged that the claimant filed her motion to reopen after she returned to work and that KRS 342.125(4) normally would have precluded a TTD award. It reasoned, however, that because she raised the TTD issue during the pendency of the employer's reopening, the broad authority that KRS 342.125(4) gave the ALJ over the reopened claim permitted the ALJ to award TTD from the date of the employer's motion. We disagree.

*Beale v. Faultless Hardware*, 837 S.W.2d 893 (Ky.1992), explains that even settled workers' compensation awards are

subject to the principles of the finality of judgments. Although KRS 342.305 permits a final award to be enforced as a judgment in circuit court, KRS 342.125 permits a reopening and/or modification of the award under certain circumstances. KRS 342.125(1) and (3) permit a reopening to determine the compensability of medical expenses or to obtain TTD benefits during the period of an award. Chapter 342 and the regulations set forth distinct procedures by which a party must invoke an ALJ's jurisdiction to consider a reopening. They vary according to the purpose of the reopening.

KRS 342.020(1) requires an employer to pay reasonable and necessary medical bills for treating a work-related injury. The court explained in *Mitee Enterprises v. Yates,* 865 S.W.2d 654 (Ky.1993), that the statute requires an employer to pay post-award medical bills or to contest them within 30 days of their receipt. Under KRS 342.125(1) and 803 KAR 25:012, the procedure for invoking an ALJ's jurisdiction to decide the compensability of a post-award medical bill is for the employer to file a motion to reopen and a Form 112 (medical dispute). An employer who moves to reopen has the burden to prove that the bill is not compensable. In this case, the employer relied on utilization review reports and asserted in its reopening that the disputed bills were for treatment that was unreasonable and/or unnecessary for the effects of the work-related knee injury. The fact that a treatment results in TTD is not material to whether it is reasonable, necessary, and due to the work-related injury. Thus, the employer's motion did not place the TTD issue before the ALJ.

KRS 342.125(1)(d) permits a party to invoke an ALJ's jurisdiction to diminish or increase the compensation under a final award due to a change of disability caused by an improvement or worsening of the worker's impairment. Under KRS 342.125(1)(d) and 803 KAR 25:010, the party must file a motion to reopen that is supported by objective medical evidence of a worsening or improvement of impairment. KRS 342.125(3) and (8) permit a worker to seek TTD benefits at any time within the period of an award. The claimant did so, but she filed her motion after the period of TTD had expired.

■ As amended effective December 12, 1996, KRS 342.125(4) gives an ALJ broad authority over a reopened claim. But by codifying longstanding decisions that any changes in the amount of benefits due to a post-award change of disability must be prospective, it places an unambiguous limit on an ALJ's authority to order a change in the amount of compensation.[1] KRS 342.125(4) states, in pertinent part, as follows:

> Upon reopening, the administrative law judge may end, diminish, or increase compensation previously awarded, within the maximum and minimum provided in this chapter, or change or revoke a previous order.... Reopening shall not affect the previous order or award as to any sums already paid thereunder, and any change in the amount of compensation shall be ordered only from the date of filing the motion to reopen. No employer shall suspend benefits during pendency of any reopening procedures except upon order of the administrative law judge.

Workers' compensation is a statutory creation that confers rights and responsibili-

---

**1.** See *Reynolds v. Justice Coal Co.,* 425 S.W.2d 750 (Ky.1968); *Lincoln Coal Co. v. Watts,* 275 Ky. 130, 120 S.W.2d 1026 (Ky.1938); *Rex* *Coal Co. v. Campbell,* 213 Ky. 636, 281 S.W. 1039 (Ky 1926); *Newberg v. Cash,* 854 S.W.2d 791 (Ky.App.1993).

ties on workers and employers. The very right to reopen what equates to a final judgment and be awarded additional income benefits is a matter of legislative grace. Although KRS 342.125(4) limits an ALJ's flexibility in cases where the onset of TTD is sudden, this case does not involve the sudden onset of TTD due to an emergency. The claimant underwent an elective procedure. Nothing would have prevented her from preserving her rights by filing a prospective motion, supported with a report from her treating physician, in which she sought to compel the employer to authorize the surgery and to pay TTD from the surgery date through the recovery date. The fact remains that she failed to attempt to invoke the ALJ's jurisdiction to consider a claim for TTD benefits until several months after her period of TTD ended. The sole question before the ALJ until that date was whether the surgery was compensable. Because disability that resulted from the surgery was not material to whether it was compensable, the date of neither party's motion supported the TTD award. The Board erred in concluding otherwise.

█ The Board did not address the ALJ's conclusion that the principles of waiver and estoppel precluded the employer from objecting to the TTD award, but its adoption of a rationale different from the ALJ's may be viewed as implying that it disagreed. In any event, we find no merit in a conclusion that by reopening to contest the medical bill the employer waived its right to contest the motion seeking TTD. We have determined previously that the ALJ erred in concluding that that the TTD issue arose as a consequence of the medical dispute. That erroneous conclusion was the ALJ's basis for applying the principles. *National Surety Marine Ins. Corp. v. Wheeler*, 257 S.W.2d 573 (Ky.1953), explains that a waiver involves the intentional relinquishment of a known right. KRS 342.020 places certain conditions on an employer's right to contest the compensability of post-award medical expenses, but nothing in Chapter 342 conditions an employer's right to do so on a relinquishment of its right to object to an untimely motion seeking TTD. Moreover, no evidence indicated that this employer led the claimant to believe that she would receive TTD benefits or engaged in other conduct that would warrant an equitable remedy. Thus, the principles of waiver and/or estoppel did not preclude the employer's objection to the TTD award.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.